UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JERRY KRAUS,

    Plaintiff,

v.

SURJEET S. RATTU; KULDIP S. RATTU,

    Defendants.

No. 2:18-cv-0627 MCE DB

<u>FINDINGS AND RECOMMENDATIONS</u>

Pending before the court is plaintiff's motion for default judgement against defendants Surjeet Rattu and Kuldip Rattu. (ECF No. 11.) This motion came on for hearing before the undersigned on July 26, 2019. (ECF No. 13.) Attorney Bradley Smith appeared on behalf of plaintiff. No appearance was made by, or on behalf of a defendant.

Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that plaintiff's motion be granted.

## BACKGROUND

Plaintiff Jerry Kraus initiated this action through counsel on March 23, 2018, by filing a complaint and paying the required filing fee. (ECF No. 1.) The complaint alleges that plaintiff

////

////

1

has a back injury and "uses a wheelchair for mobility." (Compl. (ECF No. 1) at 1.[1]) Defendants Surjeet Rattu and Kuldip Rattu owned real property located at 2909 Sonoma Blvd., in Vallejo, California during the relevant period. (Id.)

Plaintiff visited the property in February of 2018, to eat at J & M Mississippi BBQ restaurant. (Id. at 2.) The restaurant had "no parking spaced marked and reserved for disabled persons . . . during plaintiff's visit." (Id.) Plaintiff "plans to return and patronize" the restaurant but will be deterred until the barriers are removed. (Id. at 3.)

Pursuant to these allegations, the complaint alleges the defendants violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, ("ADA"), and the Unruh Civil Rights Act, California Civil Code § 51, ("Unruh Act"). (Id. at 5-8.) Plaintiff filed proof of service on defendant Kuldip Rattu on April 3, 2018, and on defendant Surjeet Rattu on May 1, 2018. (ECF Nos. 4 & 5.) On May 11, 2018, plaintiff filed requests for entry of defendants' default. (ECF Nos. 6 & 7.) The Clerk entered defendants' default on May 14, 2018. (ECF Nos. 8 & 9.)

On June 21, 2019, plaintiff filed the pending motion for default judgment. (ECF No. 11.) Plaintiff's motion seeks injunctive relief, statutory damages of $4,000, and attorneys' fees and costs in the amount of $5,457.50. (ECF No. 11-8 at 2.)

The motion came for hearing before the undersigned on July 26, 2019. (ECF No. 20.) Despite being served with notice of the motion and hearing, no defendant appeared at the hearing or filed an opposition to plaintiff's motion for default judgement. (ECF No. 18-8.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also

////

---

[1] Page number citations such as this are to the page number reflected on the court's CM/ECF system and not to the page numbers assigned by the parties.

DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

**A.      Appropriateness of the Entry of Default Judgment under the Eitel Factors**

Plaintiff's motion for default judgement seeks judgement on the two claims presented in the complaint: a cause of action under Title III of the Americans with Disabilities Act, and a cause of action under the California Unruh Civil Rights Act. (Pl.'s MDJ (ECF No. 11-1) at 7-10.) The factual allegations of plaintiff's complaint are taken as true pursuant to the entry of default against the defendants.

**1.      Factor One: Possibility of Prejudice to Plaintiff**

The first Eitel factor considers whether plaintiff would suffer prejudice if default judgment is not entered. When a defendant has failed to appear and defend the claims, a plaintiff will be without recourse and suffer prejudice unless default judgment is entered. Vogel v. Rite

Aid Corp., 992 F.Supp.2d 998, 1007 (C.D. Cal. 2014) (granting a default judgement for a disabled plaintiff suing under the ADA and Unruh Act, relying upon this rationale). Here, the defendants have failed to appear and defend against plaintiff's claims of discrimination under the ADA and the Unruh Act. Absent entry of default judgement, plaintiff would likely be without recourse against the defendants. Because plaintiff will suffer prejudice if left without recourse, this factor favors an entry of default judgment.

**2.     Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The second and third factors are (1) the merits of plaintiff's substantive claim, and (2) the sufficiency of the complaint. Eitel, 782 F.2d at 1471-72. Thus, the second and third Eitel factors require plaintiff to state a claim on which plaintiff can recover. PepsiCo, Inc. v. California Security Cans, 238 F.Supp.2d, 1172, 1175 (2002); see Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). Given the close relationship between the two inquiries, factors two and three are considered together. As noted above, plaintiff seeks default judgment on the complaint's claims of discrimination in violation of Title III of the Americans with Disabilities Act and discrimination in violation of the Unruh Civil Rights Act.

### (1)     Title III of the ADA

#### (a)     Applicable Legal Standards under the ADA

Title III of the ADA prohibits discrimination against an individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." Roberts v. Royal Atlantic Corp., 542 F.3d 363, 368 (2nd Cir. 2008); U.S.C. § 12182(a). Generally, the concept of "discrimination" under the ADA not only includes obviously exclusionary conduct — such as a sign stating that persons with disabilities are unwelcome, but also extends to more subtle forms of discrimination — such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011); PGA Tour, Inc. v. Martin, 532 U.S. 661, 674-75 (2001). With respect to existing facilities, discrimination includes

"a failure to remove architectural barriers … where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A).

To determine if a barrier exists, the ADAAG[2] establishes the technical standards. If a barrier violates these standards relating to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes "discrimination" under the ADA. Chapman, 631 F.3d at 947; Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1034 (9th Cir. 2008). Removal is readily achievable where it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 1218(9).

To prevail on a Title III ADA claim, plaintiff must establish that (1) plaintiff is disabled within the meaning of the ADA; (2) that defendant owns, leases, or operates a place of public accommodation; and (3) that defendant discriminated against the plaintiff within the meaning of the ADA. Chapman, 631 F.3d at 950. For an ADA plaintiff to establish Article III standing to pursue injunctive relief, plaintiff must demonstrate the threat of a future repeated injury is real and immediate. Id. at 946.

To demonstrate sufficient likelihood of future harm, a plaintiff can establish that plaintiff intends to return to a noncompliant place of public accommodation where plaintiff is "likely to reencounter a discriminatory architectural barrier." Id. at 950. Alternatively, a plaintiff can show that the "discriminatory architectural barriers deter him from returning to a noncompliant accommodation," but that plaintiff would return if the barriers were removed. Id.

**(b) Analysis**

In the instant case, plaintiff established standing under the intent-to-return theory. In this regard, the complaint alleges that plaintiff "plans to return and patronize J & M Mississippi BBQ but will be deterred from visiting until the defendants remove the barriers." (Compl. (ECF No. 1) at 3.) Plaintiff has also provided a declaration in support of the motion for default judgment. Therein, plaintiff explains that plaintiff lives "less than 3 miles" from the restaurant and "will

---

[2] The ADA Accessibility Guidelines (ADAAG) are promulgated by the Attorney General to "carry out the provisions" of the ADA, 42 U.S.C. § 12186(b). These guidelines "lay out the technical structural requirements of places of public accommodation." Fortyune v. Am. Multi–Cinema, Inc., 364 F.3d 1075, 1080-81 (9th Cir. 2004).

return . . . as soon as the facilities are brought into compliance." (Kraus Decl. (ECF No. 11-4) at 3.) The undersigned finds that plaintiff has standing because plaintiff has suffered an injury-in-fact and has demonstrated a likelihood of future injury sufficient to support injunctive relief. Chapman, 631 F.3d at 947.

As to the merits of the ADA claim, there is little dispute that the first two requirements have been met. Plaintiff alleges in the complaint that plaintiff has "physical disabilities." (Compl. (ECF No. 1) at 1.) Plaintiff's declaration explains that plaintiff "cannot walk," "uses a wheelchair for mobility," drives "a specially equipped and modified van," and has "a disabled persons parking placard issued by the State of California." (Kraus Decl. (ECF No. 11-4) at 2.) There can be little doubt that plaintiff is "disabled" within the meaning of the ADA. See 42 U.S.C. § 12102 (defining "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual.").

In addition, the complaint alleges that the restaurant found on the property "is a facility open to the public, a place of public accommodation, and a business establishment" and that the defendants owned the restaurant during the period when plaintiff visited. (Compl. (ECF No. 1) at 1-2.) A restaurant is expressly identified as a place of public accommodation and subject to Title III of the ADA. See 42 U.S.C. § 12181 (7)(B).

With respect to the third element, whether defendant discriminated against plaintiff, the factual allegations of the complaint establish that defendants' property had "no parking spaces marked and reserved for persons with disabilities . . . during Plaintiff's visit." (Compl. (ECF No. 1) at 3.) The ADAAG requires parking spaces marked for individuals with disabilities to have access aisles. 2010 Standards § 502.1. The ADAAG also requires access aisles to be at the same level as the parking space they serve. 2010 Standards § 502.4. Here the failure to provide an accessible parking space is a barrier, thus constituting discrimination.[3] See Estrada v. South Street Property, LLC, No. 2:17–CV–00259 CAS JCx, 2017 WL 3461290, at *4 (C.D. Cal. Aug.

////

---

[3] Barriers are determined by reference to the ADA Accessibility Guidelines (ADAAG). Chapman, 631 F.3d 939, 945. The ADAAG are listed in 36 CFR Appendix D to Part 1191.

6

11, 2017) ("[L]ack of accessible parking spaces constitutes an architectural barrier under the ADA.").

Finally, the complaint alleges defendants "exercised control and dominion over the conditions at this location," defendants "had the means and ability to make the change," and the identified violations "are easily removed without much difficulty or expense." (Compl. (ECF No. 1) at 3-4.) Therefore, removal of these barriers is "readily achievable" by defendants, and defendants' failure to do so constitutes "discrimination" under the ADA. 42 U.S.C. § 12182(b)(2)(A).

Accordingly, the elements of the ADA claim are satisfied, and plaintiff has met the burden to state a prima facie Title III discrimination claim. The second and third Eitel factors thus favor the entry of default judgment. See Lozano v. C.A. Martinez Family Ltd. Partnership, 129 F.Supp.3d 967, 972-73 (S.D. Cal. 2015); Vogel v. Rite Aid Corp., 992 F.Supp.2d 998, 1009-10 (C.D. Cal. 2014).

**(2) California's Unruh Civil Rights Act**

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). As expressly provided by statute, a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51 (f); see also Munson v. Del Taco, Inc., 46 Cal. 4th 661, 664-65 (Cal. 2009). Here, because plaintiff's complaint alleges a prima facie claim under the ADA, plaintiff has also alleged facts supporting a claim under the Unruh Civil Rights Act.

**3. Factor Four: The Sum of Money at Stake in the Action**

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Eitel, 782 F.2d at 1471-72; see also Philip Morris USA, Inc v. Castworld Prods., Inc., 219 F.R.D. 494, 500. (C.D. Cal. 2003). In this case, plaintiff seeks injunctive relief; statutory damages of $4,000 under the Unruh Civil Rights

Act; and attorney's fees and costs in the amount of $5,457.5, for a total award of $9,457.50. (Pl.'s MDJ (ECF No. 11-1) at 10.) Although the undersigned more closely scrutinizes the requested statutory damages, attorney's fees and costs below, the undersigned does not find the overall sum of money at stake to be so large or excessive as to militate against the entry of default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

This Eitel factor considers the possibility that material facts are disputed. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, there appears to be no material facts in dispute. This factor weighs in favor of a default judgment.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

This Eitel factor considers the possibility that the defendant's default was the result of excusable neglect. Despite having been properly served with plaintiff's complaint, the requests for entry of default, and the instant motion for default judgment defendants have been non-responsive in this action. (ECF Nos. 4, 5, 7-2, 11-9.) Thus, the record suggests that the defendants have chosen not to defend this action, and that the default did not result from excusable neglect. Accordingly, this Eitel factor favors the entry of default judgment.

### 6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

The final Eitel factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment. Eitel, 782 F.2d at 1472. Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is warranted. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. 2010). Because the defendants have failed to respond in this matter, a decision on the merits is impossible. Therefore, the seventh Eitel factor does not preclude the entry of default judgment.

### 7. Summary of Eitel Factors

In sum, upon consideration of all the Eitel factors the undersigned finds that plaintiff is entitled to a default judgment against the defendants and recommends that such a default judgment be entered. The undersigned therefore turns to plaintiff's requested damages and injunctive relief.

## B. Terms of the Judgment to Be Entered

### 1. Injunctive Relief

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. See Landstar Ranger, Inc. v. Path Enterprises, Inc., 725 F.Supp.2d 916, 920 (C.D. Cal. 2010.). Plaintiff's motion for default judgment seeks injunctive relief. (Pl.'s MDJ (ECF No. 11-8) at 2.) Injunctive relief may be granted "when architectural barriers at defendant's establishment violate the ADA . . . ." Vogel, 992 F.Supp.2d at 1015.

Having found that plaintiff has established that the defendants violated the ADA, the undersigned recommends that plaintiff's request for injunctive relief be granted, and defendants be ordered to remove the barriers at the property identified in plaintiff's complaint, to the extent the defendants have the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities. See Vogel, 992 F.Supp.2d at 1015.

### 2. Statutory Damages

The Unruh Act provides that a plaintiff subjected to discrimination is entitled to recover $4,000 for each occasion on which the plaintiff was denied equal access. Cal. Civ. Code § 52(a). To recover statutory damages, a plaintiff need only show that plaintiff was denied full and equal access, not that plaintiff was wholly excluded from enjoying defendant's services. Vogel, 992 F.Supp.2d at 1015; Hubbard v. Twin Oaks Health and Rehabilitation Center, 408 F.Supp.2d 923, 932 (E.D. Cal. 2004). "A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(b).

////

In support of the request for $4,000 in statutory damages, plaintiff has submitted a declaration stating that plaintiff went to the restaurant in February of 2018 and encountered a lack of disabled parking. (Kraus Decl. (ECF No. 11-4) at 3.) This statement is sufficient to support the award damages for the single violation sought by plaintiff. Accordingly, the undersigned recommends that plaintiff be awarded $4,000 in statutory damages.

### 3. Attorney's Fees and Costs

Plaintiff's motion for default judgment seeks an award of $5,457.50 in attorney's fees and costs. (Pl.'s MDJ (ECF No. 11-1) at 10.) Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs in the court's discretion. Here, plaintiff requests $660 in filing fees, service, and investigator costs, which are reasonable and should be awarded. (Price Decl. (ECF No. 11-3) at 8.)

Plaintiff also requests $4,797.50 in attorney fees for 14.5 hours of work. (Id. at 11.) To determine reasonable attorney's fees, the starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1933). This is called the "loadstar" method. The fee applicant must submit evidence of the hours worked and the rates claimed. Id.

#### (1) Reasonable Hourly Rates

In assessing application for attorney's fees, the reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011). It is also the general rule that the "relevant legal community" is the forum in which the district court sits. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013); Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010); Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Here, plaintiff requests attorney fees at hourly rates of $350 and $275. (Price Decl. (ECF No. 18-3) at 10-11.) Plaintiff's request is supported by a declaration from plaintiff's attorney Dennis Price. The declaration asserts that plaintiff's attorney Mark Potter is the founding member of his law firm and that he has 25 years of experience handling disability related issues.

(Id. at 4.) Plaintiff asserts that attorney Potter's "billing rate at $425 in this case is well below market rate," and that "Mr. Potter's requested billing rate of $350 per hour has been granted in scores of recent federal court rulings, granting default judgment applications." (Id. at 4.) Plaintiff, however, failed to cite to any such federal court ruling from this district in support of this assertion.

Plaintiff also asserts that attorney Russell Handy is an experienced attorney and is qualified to bill at the rate of $350 per hour. (Id.) Again, plaintiff asserts that "Mr. Handy's requested billing rate of $350 per hour has been granted in scores of recent federal court rulings, granting default judgment applications." (Id. at 5.) And, again, plaintiff failed to cite to any case in support of this assertion. The same is true of plaintiff's assertion that attorney Phyl Grace's requested rate of $350 per hour has been granted in "scores of recent federal court rulings[.]" (Id.) Likewise, plaintiff provided no support for the assertion that the billing rate of $275 per hour sought by attorneys Christina Carson and Dennis Price "has been granted in scores of recent federal court rulings, granting default judgment applications." (Id. at 5-6.)

In the absence of any evidence from plaintiff establishing the prevailing market rate, the undersigned's finds, based on research and experience, that "[t]he vast majority of recent cases from this district have concluded that hourly rates of $300 for Mr. Potter and Mr. Handy, $250 for Ms. Grace, and $150 for Mr. Price [and attorney Carson] are reasonable." Johnson v. Ajay Oil Inc., No. 2:16-cv-2892 TLN EFB, 2019 WL 3729813, at *4 (E.D. Cal. Aug. 8, 2019); see, e.g., Johnson v. Hey Now Properties, LLC, No. 2:16-cv-2931 WBS KJN, 2019 WL 586753, at *3 (E.D. Cal. Feb. 13, 2019) (finding hourly rate of $300 for Potter and Handy, $250 for senior attorneys, and $150 for junior attorneys were reasonable); Johnson v. Vuong, No. 2:14-cv-0709 KJM DB, 2018 WL 3388456, at *6 (E.D. Cal. July 11, 2018) ("the overwhelming . . . weight of authority establishes that the current prevailing rate for attorney's fees for similar services by lawyers of reasonably comparable skill, experience, and quality is $250 - $300 per hour in the Sacramento division of the Eastern District of California.").

A district court errs by "discarding the declarations [offered in support of a fee award] entirely and considering only previous fee awards[.]" Roberts v. City of Honolulu, 938 F.3d

1020, 1024 (9th Cir. 2019). However, "[i]t is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate." Id. at 1024. Here, plaintiff's declaration alone does not establish the prevailing market rate. Accordingly, the undersigned has also relied on the undersigned's experience and research. See O'Campo v. Ghoman, 789 Fed. Appx. 623 (9th Cir. 2020) (where plaintiff "failed to submit 'satisfactory' evidence of current market rates" the court "permissibly relied on recent fee awards in the district to determine the prevailing rate in similar cases for attorneys with similar experience"). Nonetheless, the undersigned has not discarded the declaration offered by plaintiff's attorney.

In light of the declaration offered by plaintiff's counsel, the undersigned's experience, and recent fee awards, "the undersigned will recommend a reasonable hourly rate of $300 per hour for attorneys Potter and Handy, $250 for attorney Grace, and $150 for the less experienced associate [attorneys Price and Carson]." Johnson v. Pizano, No. 2:17-cv-1655 TLN DB, 2019 WL 2499188, at *7 (E.D. Cal. June 17, 2019).

### (2) Hours Reasonably Expended

A prevailing party is entitled to compensation for attorney time "reasonably expended on the litigation." Webb v. Board of Educ. of Dyer County, 471 U.S. 234, 242 (1985). The attorney's fee applicant bears the burden of establishing the appropriate number of hours expended. Hensley, 461 U.S. at 437; see also Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1100 (E.D. Cal. 2011) ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.").

Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citation and internal quotations omitted). "Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001)).

Here, plaintiff's motion for default judgment seeks compensation for 14.5 hours expended on this action. (Price Decl. (ECF No. 18-3) at 11.) Specifically, it seeks compensation for 4.2

hours for attorney Potter, 2.6 hours for attorney Handy, 4 hours for attorney Grace, .9 hours for attorney Carson, and 2.8 hours for attorney Price. (Id. at 10-11.)

The undersigned finds this amount of time is reasonable when compared to similar ADA cases coming before the court on motions for default judgment. See, e.g., Johnson v. Patel, No. 2:15-cv-2298 MCE EFB, 2017 WL 999462, at *3 (E.D. Sept. 21, 2015) (finding "the 8.8 hours expended in filing of motion for the ADA default judgment is admittedly modest"); Loskot v. D & K Spirits, LLC, No. 2:10-cv-0684 WBS DAD, 2011 WL 567364, at *4 (E.D. Cal. Feb. 15, 2011) (awarding 17.3 hours expended through filing of motion for default judgment); Johnson v. Hey Now Properties, LLC., No. 2:16-cv-02931-WBS-KJN, 2019 WL 586753 at *3 (E.D. May 16, 2018) (awarding 57.3 hours expended in the ADA action).

**(1) Summary**

As noted above, plaintiff should be awarded 4.2 hours at a rate of $300 per hour for the work of attorney Potter ($1,260), 2.6 hours at $300 per hour for attorney Handy ($780), 4 hours at $250 per hour for attorney Grace ($1,000), .9 hours at $150 per hour for attorney Carson ($135), and 2.8 hours at $150 per hour for attorney Price ($420) for the time expended in this matter. Given the 14.5 hours of total time expended, that yields a total fee award of $3,595. When added to the $660 in filing fees, service costs, and investigator costs the total amount of attorney's fees and costs to which plaintiff is entitled is $4,255.

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's June 21, 2019 motion for default judgment (ECF No. 11) be granted;

2. Judgment be entered against defendants Surjeet S. Rattu and Kuldip S. Rattu;

3. Defendants be ordered to pay $4,000 in statutory damages;

4. Defendants be ordered to correct the violation at the property identified in plaintiff's complaint, to the extent that defendants have the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities;

////

////

5. Defendants be ordered to pay plaintiff $4,255 in attorneys' fees and costs; and

6. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 31, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.civil\kraus0627.mdj.f&rs